John M. FOSTER, Plaintiff-Appellee,
Cross-Appellant,

v.

C.F. TURLEY, Jr., a/k/a Frank Turley,
Defendant-Counterclaimant-Appellant,
Cross-Appellee.

Nos. 85–1679, 85–1761.

United States Court of Appeals,
Tenth Circuit.

Dec. 24, 1986.

Don Klein, Jr., Albuquerque, N.M. (John P. Viebranz, Socorro, N.M., with him on brief), for defendant, counterclaimant-cross-appellee, for C.F. Turley, Jr.

Dahl L. Harris, Albuquerque, N.M., for plaintiff-appellee, cross-appellant, for John M. Foster.

Before SEYMOUR, McWILLIAMS, and TACHA, Circuit Judges.

SEYMOUR, Circuit Judge.

C.F. Turley appeals a district court decision in which the judge set aside an arbitration award in Turley's favor and assessed compensatory and punitive damages against him in the total amount of $166,-000. John M. Foster cross-appeals, seeking increased damages. We affirm in part and reverse in part, and remand for further proceedings.

The undisputed facts pertinent to our disposition of this appeal are as follows. On November 1, 1977, Turley entered into a written agreement with John M. Foster under which Turley sold Foster an undivided one-half interest in unpatented mining claims on property located in New Mexico. The agreement established the terms of sale, and provided for the development and operation of the claims and the distribution of proceeds. The agreement contained an arbitration clause, which stated:

> "Any dispute arising hereunder which cannot be settled by the parties shall be referred to arbitration under the Commercial Arbitration Rules of the American Arbitration Association. The award of the arbitrators shall be final and binding upon the parties. The primary standard to be applied by the arbitrators in resolving any dispute hereunder shall be that of maximizing the financial returns to Turley and Foster from the Property.

Rec., vol. I, at 19. The contract also stated generally that it was to be governed by New Mexico law. *Id.* at 21.

On October 19, 1981, Foster demanded arbitration pursuant to the arbitration clause, asserting that he had been fraudulently induced to enter into the agreement and that Turley had fraudulently retained developmental cost payments made by Foster. On December 1, 1982, after setting off various amounts owed by the parties to each other, the arbitrators awarded Turley $1,490. The arbitrators found that Foster "was not fraudulently induced to enter into the written Agreement dated 1 November 1977; nor was he otherwise defrauded by [Turley]." *Id.* at 28. Foster did not file a motion to vacate the award. Instead, on September 14, 1983, he filed an action in New Mexico state court against Turley alleging fraud and breach of contract arising from the agreement. Turley was served in that action on September 30, and

subsequently removed the case to federal district court.[1]

Among other things, Turley raised the arbitration award as a bar to Foster's action, and asked that the award be enforced. The case was tried without a jury. The court found that Turley had failed to disclose material facts to the arbitrators and overturned the award. On appeal, Turley contends that the arbitration issues are governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982) (Arbitration Act), and that the district court lacked subject matter jurisdiction because Foster failed to file this action to vacate the award within the time period set by the federal statute. In the alternative, Turley argues that the district court erred in vacating the award. Foster contends in his cross-appeal that the district court awarded insufficient damages.

■ If the Arbitration Act is applicable, federal law governs the enforcement of and challenges to an arbitration award, even in diversity cases such as this one. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401–05, 87 S.Ct. 1801, 1805–07, 18 L.Ed.2d 1270 (1967); *Goodwin v. Elkins & Co.,* 730 F.2d 99, 108 (3rd Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984); *Northern Illinois Gas Co. v. Airco Indus. Gases,* 676 F.2d 270, 274–75 (7th Cir.1982); *Huber, Hunt & Nichols v. Architectural Stone Co.,* 625 F.2d 22, 25 (5th Cir.1980); *Medical Dev. Corp. v. Industrial Molding Corp.,* 479 F.2d 345, 348 (10th Cir.1973). The effect of the Arbitration Act is thus to create a body of substantive federal law on arbitration governing any agreement that is within the Act's coverage. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

■ The Arbitration Act applies to a written arbitration provision in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Commerce is defined as "commerce among the several States." *Id.* § 1. The requirement that the underlying transaction involve commerce is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause. *See Snyder v. Smith,* 736 F.2d 409, 417–18 (7th Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984); *see also Prima Paint,* 388 U.S. at 401 n. 7, 87 S.Ct. at 1805 n. 7. The court must examine the agreement, the complaint, and the facts to ascertain whether the transaction is one involving commerce within the meaning of the Arbitration Act. *See, e.g., Snyder,* 736 F.2d at 417.

■ The pertinent facts are undisputed in this case; we can therefore assess them to determine whether the transaction involved commerce. *See E.C. Ernst, Inc. v. Manhattan Constr. Co.,* 551 F.2d 1026, 1040 n. 36 (5th Cir.1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978). At the time the parties entered into the agreement, Foster was a resident of Oregon and Turley was a resident of New Mexico. The agreement required Foster to make a substantial down payment to Turley, and required Turley to remit proceeds from the mining operation to Foster. Some ore from the mines was milled at facilities outside the state of New Mexico and the parties attempted to market their product all over the country. At one point Foster sent truck transportation from Oregon to haul the ore from the mines. In view of the interstate payments between the parties and the interstate nature of the production and marketing involved, we conclude that the agreement here is clearly within the ambit of the Arbitration Act. *See e.g., Creson v. Quickprint of America, Inc.,* 558 F.Supp. 984, 986 (W.D.Mo.1983) (act applies when information and records exchanged between different states); *Fairchild & Co. v. Richmond, F. & P. R.R.,* 516 F.Supp. 1305, 1310–11 (D.D.C.1981) (act applies when purpose and scope of agreement

---

1. At the time the action was filed, Foster was a citizen of New Mexico, Turley was a resident of Arizona, and the amount in controversy exceeded $10,000. Hence the federal court had diversity jurisdiction under 28 U.S.C. § 1332 (1982).

is to develop commercial venture extending beyond state line).

Despite the applicability of the Arbitration Act, Foster argues that the New Mexico arbitration statute, N.M.Stat.Ann. §§ 44–7–1 to –22 (1977), governs because the parties stipulated in their contract that New Mexico law applies. Some courts have held that notwithstanding the parties' insertion of a choice-of-law provision in their agreement, the Federal Arbitration Act applies if the contract evidences a transaction involving interstate commerce. *See, e.g., Northern Illinois Gas*, 676 F.2d at 274; *Huber, Hunt & Nichols*, 625 F.2d at 25 n. 8; *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1268–70 (7th Cir.1976). We need not decide this issue because the New Mexico Act is identical to the Arbitration Act in all respects pertinent to this case. *See generally* Greenfield, *The Contract to Arbitrate Future Disputes: A Comparison of the New Mexico Act with the New York and Federal Acts*, 9 N.M.L.Rev. 71 (1978–1979). We will therefore primarily analyze the case under federal law.

■■■ On appeal, Turley argues for the first time that the district court action was not filed within the time provisions of 9 U.S.C. § 12, which provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." The New Mexico Act has a similar time limitation, although it adds that "if predicated upon corruption, fraud or other undue means, [the motion] shall be made within ninety days after such grounds are known or should have been known." N.M.Stat. Ann. § 44–7–12 B. In this case, the arbitration award was filed on December 1, 1982. Even if the state court proceeding were construed as a motion to vacate the award, Turley was not served in that action until September 30, 1983, long after the three-month period had expired.[2] Turley asserts that timely filing is a jurisdictional

prerequisite to a court action seeking to vacate an arbitration award, and that Foster's failure to comply with the time provisions deprived the district court of subject matter jurisdiction. We disagree. We have found no case holding that the filing requirement is jurisdictional in nature, and some courts have described the time limit in section 12 as a statute of limitations, *see, e.g., Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 174–76 (2d Cir.1984); *Chauffers, Teamsters, Local Union No. 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1025–26 (7th Cir.1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). We view this bar as one in the nature of a statute of limitations, which is subject to waiver. *Cf. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (Title VII filing requirement operates as statute of limitations, subject to waiver). A review of the record in this case reveals that Turley did not raise the operation of either the federal or the state limitation provision below. Turleys' failure to invoke the filing requirement in a timely manner constitutes a waiver of its applicability to Foster's suit. *Id; see also Tapper v. Commissioner*, 766 F.2d 401, 403 (9th Cir.1985); *Martinez v. Earth Resources Co.*, 90 N.M. 590, 566 P.2d 838, 839 (Ct.App.1977).

■■■ Alternatively, Turley contends that the district court erred in concluding that the arbitration award was rendered unenforceable by Turley's failure to disclose material facts to the arbitrators. We begin our consideration of this issue by pointing out that Congress enacted the Arbitration Act to ensure that the courts uphold privately made agreements to arbitrate. *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985); *see also K.L. House Constr. Co. v. City of Albuquerque*, 91 N.M. 492, 576 P.2d 752, 753–54 (1978); Greenfield, *supra*, at 73. The Arbitration Act provides the exclusive remedy for challenging conduct that taints an arbitration

---

2. Given our conclusion infra that the issue was not raised below, we need not decide whether the state tolling provision would be applicable in this case.

award within the Act's coverage. *See Corey v. New York Stock Exch.,* 691 F.2d 1205, 1211–13 (6th Cir.1982). Contracts to arbitrate are not to be undermined by allowing one party to ignore the contract and resort to the courts. *See Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 856, 79 L.Ed.2d 1 (1984). When, as here, a suit is in substance no more than a collateral attack on the award itself, it is governed by the provisions of the Act. *See Corey,* 691 F.2d at 1211–13.

■■■ Once an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of the award, and courts must exercise great caution when asked to set aside an award. *See Ormsbee Dev. Co. v. Grace,* 668 F.2d 1140, 1146–47 (10th Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982). Because a primary purpose behind arbitration agreements is to avoid the expense and delay of court proceedings, *see Southland,* 104 S.Ct. at 856, it is well settled that judicial review of an arbitration award is very narrowly limited, *see Diapulse Corp. of Am. v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2d Cir.1980).

■■■ Under both the Arbitration Act and the New Mexico Act, a court may vacate an arbitration award where "the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a); N.M. Stat.Ann. § 44–7–12 A(1). However, "in order to protect the finality of arbitration decisions, courts must be slow to vacate an arbitral award on the ground of fraud." *Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293, 1297 (9th Cir.1982). The party asserting fraud must establish it by clear and convincing evidence, *see id.; cf. Durrett v. Petritsis,* 82 N.M. 1, 474 P.2d 487, 489 (1970), and must show that due diligence could not have resulted in discovery of the fraud prior to arbitration, *see Shearson Hayden Stone, Inc. v. Liang,* 653 F.2d 310, 313 (7th Cir.1981).

■■■ In this case, the district court's decision to declare the arbitration award unenforceable was apparently based on its

finding that Turley had failed to reveal to Foster or to the arbitrators the fact that he had relocated the mining claims under his name alone. However, the court also found that these relocations had been filed *in 1980* by Turley in the public land records and with the appropriate federal agency. Moreover, the agreement between Foster and Turley, which was drawn up by Foster's counsel, on its face contains an after-acquired property clause, which appears to apply to the relocated claims and which would give Foster an undivided one-half interest in them. Even if nondisclosure of evidence under these circumstances could constitute fraud under section 10, the district court did not state whether Foster had proven fraud by clear and convincing evidence, nor did the court address whether Foster could have discovered the fraud prior to the arbitration proceedings by exercising due diligence. Accordingly, we must remand this matter to allow the trial court to assess the evidence under the proper standard, and to address in particular the effect of the after-acquired property clause and the recordation in 1980 on the issue of fraud and due diligence. *See Dogherra,* 679 F.2d at 1297.

■■■ If the district court determines by clear and convincing evidence that Turley committed fraud on the arbitrators, and that Foster could not by due diligence have discovered the fraud, section 10 of the Arbitration Act authorizes the court to enter an order vacating the arbitration award. *See also* N.M.Stat.Ann. § 44–7–12 A(1). However, the court is not authorized to decide the merits of an issue committed by the parties to arbitration. *See Diapulse,* 626 F.2d at 1110. Under section 11(c) of the Act, the court may only modify or correct an award "[w]here the award is imperfect in matter of form *not affecting the merits of the controversy.*" 9 U.S.C. § 11(c) (emphasis added); *see also* N.M. Stat.Ann. § 44–7–13 A(3). This section "does not license the district court to substitute its judgment for that of the arbitrators." *Diapulse,* 626 F.2d at 1110; *see also Ormsbee,* 668 F.2d at 1147 (court not entitled to judge arbitration award indepen-

dently). "This sort of judicial intervention into the arbitral process is precisely what the narrowly defined provisions of sections 10 and 11 were designed to prevent." *Diapulse*, 626 F.2d at 1110. Accordingly, if the district court here determines on remand that the award must be vacated on the ground of fraud, the court may not then decide the merits of the controversy. The court may only consider whether, pursuant to section 10(e) of the Act, a remand to the arbitrators for rehearing is appropriate. *See also* N.M.Stat.Ann. § 44–7–12 C.

In sum, we must reverse the judgment of the district court to the extent that it determines the merits of issues committed to arbitration. We thus reverse: (1) the entry of judgment against Turley for $101,000, representing the amount Foster paid pursuant to the agreement; (2) the entry of judgment against Turley for $10,000 representing the amount Foster paid for an undivided one-half interest in the Turley Amended 1–6 claims; and (3) the award of $50,000 in punitive damages imposed on Turley in connection with his conduct under the agreement. We affirm the award of $5,000 to Foster arising from the purchase of Indian pottery unrelated to the agreement. We remand for further proceedings consistent with this opinion.