Thomas E. LACHENEY, Plaintiff,

v.

**PROFITKEY INTERNATIONAL, INC., Defendant.**

Civ. A. No. 3:93CV173.

United States District Court, E.D. Virginia, Richmond Division.

April 22, 1993.

Thomas E. Lacheney, Richmond, VA, pro se.

Michael John Farley, Warren Eugene Zirkle, McGuire, Woods, Battle and Boothe, Richmond, VA, David S. Godkin, Carl E. Metzger, Testa, Hurwitz & Thibeault, Boston, MA, for defendant.

### *MEMORANDUM OPINION*

SPENCER, District Judge.

This matter is before the Court on defendant ProfitKey International, Inc.'s Motion to Stay This Action Pending Compulsory Arbitration. Plaintiff Thomas E. Lacheney is proceeding *pro se.*

For the reasons set forth below, as well as those stated from the bench at the hearing held on defendant's motion on April 14, 1993, defendant's motion will be GRANTED.

## I.

On April 17, 1991, defendant ProfitKey entered into a contract with Software Enterprises, Inc. (SEI), permitting SEI to market ProfitKey computer software within the state of Virginia under certain terms and conditions. Plaintiff Lacheney brings this lawsuit as the alleged assignee of SEI's rights under that contract. While Mr. Lacheney was not expressly made a party to the contract, he was actively involved in the negotiations between ProfitKey and SEI.

ProfitKey is a Delaware corporation with its principal place of business in Salem, New Hampshire. Plaintiff Lacheney is a Virginia resident; SEI is a Virginia corporation.

The contract between ProfitKey and SEI includes, *inter alia*, the following provision:

### SECTION 11

### ARBITRATION

11.1 *ARBITRATION PROCEDURE.* All claims, disputes, controversies, and other matters in question between the parties to this Agreement arising out of or relating to this Agreement or one or more Products shall be submitted to binding arbitration. Such arbitration shall be conducted in the State of Massachusetts by the Commercial Arbitration Rules of the American Arbitration Association by a single arbitrator appointed by the American Arbitration Association and agreed upon by both parties. Insofar as possible such arbitrator shall be required to have substantial experience in the field of computer application software sales, marketing and support. In no event shall both parties have the right to recover from each other any indirect, special, incidental, or consequential damages (including lost profits). The decision of the arbitrator shall be final and binding on both

the [Marketing Associate] and [ProfitKey] and may be entered and enforced in any court of competent jurisdiction by any party to this Agreement.

In his Complaint plaintiff Lacheney, notwithstanding the arbitration provision, seeks rescission of the contract between ProfitKey and SEI and restitution for the value of services performed on behalf of ProfitKey.

## II.

Under the Federal Arbitration Act (FAA), codified as amended at 9 U.S.C. § 1 *et seq.*,

A written provision in ... a contract evidencing a transaction involving commerce [1] to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. If a suit nevertheless is brought in federal court upon any issue referable to arbitration under such an agreement, the court in which the suit is brought must, upon application of one of the parties, stay the trial of the action until arbitration has been completed. 9 U.S.C. § 3. Accordingly, unless this case fits within an exception to the FAA's requirements, defendant's motion to stay must be granted.

## III.

Plaintiff Lacheney argues that the FAA does not apply to the contract at issue in this case, because the contract does not "evidenc[e] a contract involving commerce," as required by 9 U.S.C. § 2. According to plaintiff,

the agreement between Profit[K]ey and SEI was one that was intended to be carried out exclusively in the Commonwealth of Virginia. The contract itself was one for personal services to be performed exclusively in Virginia. The only function to be performed by SEI was generating and tracking prospective customers in Virginia. No interstate commerce was intended.

---

1. "Commerce" is defined as including "commerce among the several States or with foreign nations...." 9 U.S.C. § 1.

SEI did not have the authority to sell the Profit[K]ey software, enter into any contracts on behalf of Profit[K]ey, or in any way initiate any interstate commerce. All SEI was authorized to do was follow up leads in Virginia.

The diversity of the parties, plaintiff asserts, was the only "interstate" aspect of the contract. As plaintiff notes, "the mere circumstance of diversity of citizenship between [the parties] is not sufficient to command application of the Federal Act." *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 978 n. 4 (4th Cir.1985). When, however, "the transaction between the parties evidences other connections to interstate commerce," the FAA is applicable.

The applicability of the FAA to a personal services contract not involving any interstate shipment of goods was considered in *Burke County Public Schools Board of Education v. Shaver Partnership*, 303 N.C. 408, 279 S.E.2d 816 (1981), which stated:

> It is clear … that a contract need not contemplate the interstate shipment of goods in order to evidence a transaction involving commerce…. [A] personal service contract which contemplates substantial interstate activity is a contract evidencing a transaction involving commerce within the meaning of the [A]ct.

*Id.*, 279 S.E.2d at 821. The proper test, the North Carolina court determined, was that set forth by Judge Lumbard in his concurring opinion in *Metro Industrial Painting Corp. v. Terminal Construction Co.*, 287 F.2d 382 (2d Cir.1961), *cert. denied,* 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961):

> The significant question [in determining whether a contract evidences a transaction involving commerce] …, is not whether, in carrying out the terms of the contract, the parties *did* cross state lines, but whether, at the time they entered into it and accepted the arbitration clause, they *contemplated* substantial interstate activity. Cogent evidence regarding their state of mind at the time would be the terms of the contract, and if it, on its face, evidences interstate traffic … the contract should come within § 2 [of the FAA].

*Id.* at 387 (emphasis in original). Thus, the North Carolina court concluded in *Burke County Public Schools,*

> Where … performance of the contract itself necessarily involves, so that the parties to the agreement must have contemplated, substantial interstate activity the contract evidences a transaction involving commerce within the meaning of the Federal Arbitration Act.

*Id.*, 279 S.E.2d at 822.

■ This Court likewise adopts the reasoning of Judge Lumbard. Applying that test in the present case, the contract clearly appears to have contemplated "substantial interstate activity." Most importantly, the principal goal of the contract was to provide for the sales of products of ProfitKey, a New Hampshire corporation, to customers in Virginia. In addition, the contract contains several specific provisions for interstate activity:

- When SEI identified a sales prospect and it was approved by ProfitKey's territory Sales Engineer, SEI was to complete a "Qualified Prospect Form" and deliver it to ProfitKey in New Hampshire. Contract ¶ 1.3.

- ProfitKey was to provide training for SEI's employees at ProfitKey's "corporate education facilities," presumably located in New Hampshire. Contract ¶ 3.1(b).

- Upon request, ProfitKey was to provide a demonstration copy of its software product to SEI in Virginia. Contract ¶ 3.1(c).

- For every "Qualified Prospect and Lead Registration" form presented by SEI to ProfitKey, ProfitKey was required to pay SEI (presumably by transferring monies from New Hampshire to Virginia) a percentage of the list price of the applicable products. Contract ¶ 3.2(a).

Considered as a whole, this level of contemplated interstate activity unquestionably is sufficient to justify application of the Federal Arbitration Act.

## IV.

Plaintiff Lacheney alternatively argues that, even if the Federal Arbitration Act does apply, the arbitration clause is unenforceable because of the exception created in the statute for "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Specifically, plaintiff asserts that a "failure of consideration" has occurred which permits him to rescind the entire contract.[2] Plaintiff cites, *inter alia,* 6 Samuel Williston, *A Treatise on the Law of Contracts* § 814 (3d ed. 1962), which states:

> Failure of consideration exists wherever one who has promised to give some performance fails, without his fault, to receive in some material respect the agreed exchange for that performance. Where the counter-promise to perform relates to a material matter, the disappointed party has a right to rescind the contract.

■ It is true that, while the federal policy favoring arbitration is strong, it is not so strong as to compel enforcement of an arbitration clause which is unenforceable for lack of consideration. *Hull v. Norcom, Inc.,* 750 F.2d 1547, 1550–51 (11th Cir.1985). That is not true in this case, however.

■ The agreement of one party to a contract to arbitrate disputes is sufficient consideration to support the other party's agreement to do the same. *Hellenic Lines Ltd. v. Louis Dreyfus Corp.,* 372 F.2d 753, 758 (2d Cir.1967) ("Hellenic's promise to arbitrate was sufficient consideration to support Dreyfus's promise to arbitrate"); *Gramling v. Food Machinery & Chem. Corp.,* 151 F.Supp. 853, 856 (W.D.S.C.1957) ("Both parties were entitled to have their differences resolved by jury trial. Instead, they agreed to arbitration.... This was a valid and binding contract, amply supported by consideration"). *Cf. Hull,* 750 F.2d at 1549–50 (arbitration provision not enforceable where it was only binding on one party).

■ Plaintiff's argument is that the entire contract, not just the arbitration provision, fails for lack of consideration, and that the

whole thing should be rescinded. However, the contract contains a "severability" clause which states:

> If any provision of this agreement is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.

Contract at ¶ 12.2. Even if the rest of the contract lacks adequate consideration, such consideration *does* exist for the arbitration clause, as discussed above. Thus, the arbitration clause is enforceable under the FAA.

## V.

For the reasons stated above, and those stated from the bench, defendant's Motion to Stay this Action Pending Compulsory Arbitration is hereby GRANTED.

---

**2.** According to plaintiff, "Profit[K]ey has violated every material term of the contract and the entire contract has failed."